VERSO LAW GROUP LLP
GREGORY S. GILCHRIST (Cal. Bar No. 111536)
RYAN BRICKER (Cal. Bar No. 269100)
SOPHY TABANDEH (Cal. Bar No. 287583)
PAYMANEH PARHAMI (Cal. Bar No. 335604)
565 Commercial Street, 4th Floor
San Francisco, California 94111
Telephone:   (415) 534-0495
Facsimile:   (270) 518-5974
Email:       greg.gilchrist@versolaw.com
             ryan.bricker@versolaw.com
             sophy.tabandeh@versolaw.com
             paymaneh.parhami@versolaw.com

Attorneys for Plaintiff
PATAGONIA, INC.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| PATAGONIA, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SLUMPED BOYZ LLC, and CESAR LUPIAN, JR.,<br><br>　　　　Defendants. | Case No. 2:25-cv-00707<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, DILUTION, AND COPYRIGHT INFRINGEMENT**<br><br>**JURY TRIAL DEMAND** |

This lawsuit seeks to stop Slumped Boyz, LLC, and Cesar Lupian, Jr., ("Defendants") from infringing, and misusing Patagonia, Inc.'s ("Patagonia") trademarks. Defendants have sold pullovers that copy Patagonia's Snap-T® pullover fleece and bear nearly identical copies of Patagonia's original P-6 logo artwork, replacing Patagonia's PATAGONIA trademark with its own "slumped" slogan trademark and adding a drinking cup to the left edge of the mountain outline. Defendant has offered these products for sale on its website (slumpedboyz.com) and through its storefront in Houston. To stop this conduct, Patagonia alleges as follows:

//

COMPLAINT
CASE NO. 2:25-cv-00707

- 1 -

## PARTIES, JURISDICTION, AND VENUE

1.      Patagonia is a California corporation headquartered at 259 West Santa Clara Street, Ventura, California 93001.  Patagonia has been designing, developing, and marketing clothing for more than forty years.  Today, Patagonia and the PATAGONIA brand are famous around the world for innovative apparel designs, quality products, and environmental and corporate responsibility.

2.      Defendant Slumped Boyz LLC ("Slumped") is a Texas limited liability company with its principal place of business located, on information and belief, at 4102 Fannin Street, Houston, TX 77004. Slumped offers, promotes, and sells products that infringe Patagonia's intellectual property rights through multiple channels, including online and through its Houston storefront.

3.      Defendant Cesar Lupian, Jr. ("Mr. Lupian") is an individual who, on information and belief, resides in Harris County, Texas. Mr. Lupian is the owner of Slumped.

4.      Patagonia's trademark claims arise under the Trademark Act of 1946 (the Lanham Act), as amended by the Trademark Dilution Revision Act of 2006 (15 U.S.C. §§ 1051, *et seq.*).  Patagonia's claims for copyright infringement arise from Defendant's infringement of Patagonia's exclusive rights under the United States Copyright Act (17 U.S.C. §§ 101, *et seq.*).  This Court has jurisdiction over such claims pursuant to 28 U.S.C. §§ 1338(a) and 1338(b) (trademark and unfair competition), 17 U.S.C. § 501 (copyright), 28 U.S.C. § 1331 (federal question), and 15 U.S.C. § 1121 (Lanham Act).

5.      This Court has personal jurisdiction over Defendants because Defendants operate a website that is used to sell their infringing products into this district, and have purposefully availed themselves of doing business in this district. Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(a) because Defendants infringe Patagonia's intellectual property in this district, transacts business in this district, and a substantial part of the events giving rise to the claims

COMPLAINT
CASE NO. 2:25-cv-00707

asserted arose in this district.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

**Patagonia's History**

6.    Patagonia was founded in the late 1960s to design and sell climbing clothes and other active sportswear.  The company adopted the brand "PATAGONIA" to differentiate a related business that designed and manufactured climbing gear and tools.  PATAGONIA was chosen as the trademark to call to mind romantic visions of glaciers tumbling into fjords, jagged windswept peaks, gauchos, and condors.  Since at least 1973, the PATAGONIA brand has appeared on a multi-colored label inspired by a silhouette of the jagged peaks of the Mt. Fitz Roy skyline (the "P-6 logo").

7.    In the nearly fifty years since Patagonia's business started, the PATAGONIA brand and its P-6 logo have become among the most identifiable brands in the world.  Patagonia's products now include a wide range of apparel products and equipment, including T shirts, hoodies, sweatshirts, and fleece, as well as technical products designed for climbing, skiing and snowboarding, surfing, fly fishing, and trail running, which are sold around the world.

8.    Patagonia introduced its Snap-T® pullover fleece in 1985 as the first technical fleece product that was as warm as wool insulation but was lighter and dried faster.  Four years later, in 1989 Patagonia added the snapped flap pocket to the Snap-T design, and an iconic design was born.  In the 33 years since its debut, the Snap-T has become an immediately recognizable Patagonia design including the yoke, contrasting pocket and piping trims. Patagonia regularly has advertised the design for decades, including a substantial campaign in 2015 as well as featuring the Snap-T in a recent campaign in an ode to its 1985 origins. The Snap-T design is widely recognized as iconic—it was included in a New York Museum of Modern Art exhibit entitled "Items: Is Fashion Modern?" with the following description: "the distinctive patch pocket associated with today's fleece outerwear was originally

a work-around" and the Snap-T's "bright color palette took fleece out of the woods and onto the street." The design also was included in the inaugural exhibition, "Values of Design," in the Victoria & Albert Gallery.

9.    Over the years, Patagonia has been recognized and honored for its business initiatives, including receiving the Sustainable Business Counsel's first "Lifetime Achievement Award."  In 1996, with an increased awareness of the dangers of pesticide use and synthetic fertilizers used in conventional cotton growing, Patagonia began the exclusive use of organically grown cotton and has continued that use for more than twenty years.  It was a founding member of the Fair Labor Association®, which is an independent multi-stakeholder verification and training organization that audits apparel factories.  Additionally, since 1985 Patagonia has pledged 1% of sales to environmental groups to preserve and restore our natural environment, donating more than $140 million to date.  In 2002, Patagonia's founder, Yvon Chouinard, along with others, created a non-profit called 1% For the Planet® to encourage other businesses to do the same.  Today, more than 1,200 member companies have donated more than $150 million to more than 3,300 nonprofits through 1% For the Planet.  In 2012, Patagonia became one of California's first registered Benefit Corporations, ensuring Patagonia could codify into its corporate charter consideration of its workers, community, and the environment.  In 2022, Patagonia's owners donated their holdings in the company to a Purpose Trust and nonprofits dedicated to fighting the environmental crisis and defending nature.

**Patagonia's Trademarks**

10.  Patagonia owns numerous registrations for its distinctive P-6 logo and PATAGONIA trademark, covering a wide-ranging assortment of products.  Among these are the following U.S. trademark registrations:

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
| patagonia | 1294523 / Sept. 11, 1984 | Men's, Women's and Children's Clothing-Namely, Jackets, Pants, Vests, Gloves, Pullovers, Cardigans, Socks, Sweaters, Underwear, Shirts, Shorts, Skirts and Belts | 08/1974-1981 |
| | 1547469 / July 11, 1989 | Men's, Women's and Children's Clothing- Namely, Jackets, Pants, Shirts, Sweaters, Vests, Skirts, Underwear Tops and Bottoms, Socks, Gloves, Mittens, Hats, Face Masks, Balaclava, Gaiters, Suspenders, and Belts | 08/1974-1981 |
| patagonia | 1775623 / June 8, 1993 | Luggage back packs, and all-purpose sports bags | 08/1988 |

These registrations for the PATAGONIA mark and logos are in full force and effect. The registrations have become incontestable under 15 U.S.C. § 1065.  A color image of the P-6 logo follows:



11.   The PATAGONIA trademarks are distinctive, arbitrary and fanciful, entitled to the broadest scope of protection, and certain of the PATAGONIA

COMPLAINT
CASE NO. 2:25-cv-00707

trademarks are registered worldwide.

12.   For many years prior to the events giving rise to this Complaint and continuing to the present, Patagonia annually has spent enormous amounts of time, money, and effort advertising and promoting the products on which its PATAGONIA trademarks are used.  PATAGONIA brand products are advertised in a variety of contexts and media, including in print and on the Internet.  In addition to advertising by Patagonia, the PATAGONIA trademarks are also advertised, promoted and presented at point of sale by numerous retailers.  Consumers, accordingly, are exposed to the PATAGONIA trademarks in a wide range of shopping and post-sale contexts.

13.   Among the products that Patagonia is well known for is its Snap-T product.  This product was part of an initiative of Patagonia's founder to address issues with wool and natural fibers that did not perform well for certain activities or in certain weather.  The company developed fibers known as Synchilla® which are now produced from discarded plastic bottles and are used in the Snap-T products. The design of the Snap-T consists of Patagonia's well-known trade dress ("trade dress") that consists of a snap placket and matching pocket flap, rendered in contrasting color from the fleece and in different fabrication. Piping is used on the collar, cuffs and waist and is often rendered in a contrasting color.  The rectangular P-6 logo is placed above the pocket flap. Examples of the trade dress follow:


Endless Blue


Vessel Blue

COMPLAINT
CASE NO. 2:25-cv-00707

14. Collectively, these marks, Patagonia's other registered trademarks, trade dress, and its common law marks are referred to as the "PATAGONIA trademarks." Patagonia also owns a registered copyright (Registration No. VA 1-801-788) for the P-6 logo.

15. Patagonia has sold its PATAGONIA brand products all over the world, including throughout the United States and California. Through its promotion and investment in its brand and extensive sales, publicity, awards, and leadership in sustainable sourcing practices, Patagonia has acquired enormous goodwill in its PATAGONIA trademarks. The PATAGONIA trademarks are famous within the meaning of the Trademark Dilution Revision Act, enjoy strong consumer recognition, and are recognized around the world and throughout the United States by consumers as signifying high-quality products made by a responsible company.

**Defendant's Promotion and Sale of Infringing Products**

16. In blatant disregard of Patagonia's rights in the PATAGONIA trademarks – and without authorization from Patagonia – Defendants have promoted, offered for sale, and sold products, namely pullovers, bearing designs and logos that are nearly identical to the P-6 logo and Patagonia's trade dress, only replacing Patagonia's PATAGONIA word mark with Defendants' "slumped" slogan and mark, which, when rendered in Patagonia's distinctive font and stylization, is highly similar to Patagonia's mark. These designs and logos, and the products bearing them, are referred to as "Defendants' Designs."

//
//
//
//
//
//

COMPLAINT
CASE NO. 2:25-cv-00707

17.   Examples of Defendant's products bearing the Defendant's Designs follow:

| No. | Defendants' Designs |
| --- | --- |
| 1 |  |

2



3



18.  Defendants' Designs are substantially similar to the P-6 logo artwork, and nearly identical to Patagonia's Snap-T trade dress and registered P-6 logo trademark, replacing the PATAGONIA word mark with "slumped" and adding a tipped over drinking cup to the mountain outline.  Defendants' products bearing the Defendant's Designs are identical to and compete directly with goods sold by Patagonia, including pullovers and jackets.

19.  Defendants' use of the Defendants' Designs has caused – and if such use were to continue, will cause – a likelihood of confusion among consumers regarding the source of Defendants' products, and whether Patagonia has sponsored, licensed, authorized, or is somehow affiliated with the Defendants. Examples of consumers associating Defendants with Patagonia on Defendants' Instagram page follow below:





20.    Defendant began using the Defendants' Designs long after Patagonia's registered P-6 logo trademark became famous.  The Defendants' Designs have caused, and if use of these designs were to continue, are likely to cause dilution of Patagonia's famous and distinctive marks by diminishing their distinctiveness and singular association with Patagonia.  Patagonia has no alternative but to protect its goodwill and famous trademark by obtaining an injunction against Defendants' further use of the derivative designs.

COMPLAINT
CASE NO. 2:25-cv-00707

- 11 -

21. Patagonia is informed and believes that Defendants have marketed and sold substantial quantities of products bearing the Defendants' Designs and have profited from such sales. There is no doubt that Defendants' conduct has been willful. Defendants adopted a mark and logo that copies the PATAGONIA trademarks as part of the branding of its own product collection.

22. Defendants' copying of Patagonia's copyrighted P-6 logo violates Patagonia's rights in the design and has caused damage to Patagonia.

23. Defendants' actions have caused and, if they were to continue, will cause Patagonia irreparable harm for which money damages and other remedies are inadequate. Unless Defendants are restrained by this Court, Defendants will continue expanding their illegal activities and otherwise continue to cause irreparable damage and injury to Patagonia by, among other things:

a. Depriving Patagonia of its statutory rights to use and control use of its trademark;

b. Creating a likelihood of confusion, mistake, and deception among consumers and the trade as to the source of the infringing products;

c. Causing the public falsely to associate Patagonia with Defendants and/or their products;

d. Causing the public falsely to believe Patagonia has collaborated with Defendants, entered a co-branding relationship with Defendants, or is otherwise associated with Defendants and/or their products;

e. Causing incalculable and irreparable damage to Patagonia's goodwill and diluting the capacity of its famous PATAGONIA trademarks to differentiate its products from those of its competitors;

f. Causing incalculable and irreparable damage to Patagonia's licensing and collaboration programs, and to Patagonia's ability to control its brand partnerships and to associate itself with entities who are specifically aligned to Patagonia's company mission; and

COMPLAINT
CASE NO. 2:25-cv-00707

g.      Causing Patagonia to lose sales of its genuine PATAGONIA products.

24.   Accordingly, in addition to other relief, Patagonia is entitled to injunctive relief against Defendants.

### FIRST CLAIM

### FEDERAL TRADEMARK INFRINGEMENT

### (15 U.S.C. §§ 1114-1117)

25.   Patagonia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 24 of this Complaint.

26.   Defendants have used, in connection with the sale, offering for sale, distribution, or advertising of its products bearing the Defendants' Designs, trade dress, words and symbols that infringe upon Patagonia's PATAGONIA trademarks.

27.   These acts of trademark infringement have been committed with the intent to cause confusion, mistake, or deception, and are in violation of 15 U.S.C. § 1114.

28.   As a direct and proximate result of Defendants' conduct, Patagonia is entitled to recover up to treble the amount of Defendants' unlawful profits and Patagonia's damages and an award of attorneys' fees under 15 U.S.C. § 1117(a).

29.   Patagonia is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) that requires Defendants not to use in the future the Defendants' Designs, and any other mark or design similar to the PATAGONIA trademarks.

### SECOND CLAIM

### FEDERAL UNFAIR COMPETITION

**(False Designation of Origin and False Description – 15 U.S.C. § 1125(a))**

30.   Patagonia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 29 of this Complaint.

31.   Defendants' conduct as alleged in this Complaint constitutes the use of trade dress and symbols or devices tending falsely to describe the infringing

products, within the meaning of 15 U.S.C. § 1125(a)(1). Defendants' conduct is likely to cause confusion, mistake, or deception by or in the public as to the affiliation, connection, association, origin, sponsorship, or approval of the infringing products to the detriment of Patagonia and in violation of 15 U.S.C. § 1125(a)(1).

32. As a direct and proximate result of Defendants' conduct, Patagonia is entitled to recover up to treble the amount of Defendants' unlawful profits and Patagonia's damages, and an award of attorneys' fees under 15 U.S.C. § 1117(a).

33. Patagonia is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) that requires Defendants not to use in the future the Defendants' Designs and any other mark or design similar to the PATAGONIA trademarks.

## THIRD CLAIM

## FEDERAL DILUTION OF FAMOUS MARK

### (Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c))

34. Patagonia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 33 of this Complaint.

35. Patagonia's P-6 logo trademark is distinctive and famous within the meaning of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c), and was famous prior to Defendants' adoption of the Defendants' Designs.

36. Defendants' conduct is likely to cause dilution of Patagonia's P-6 logo trademark by diminishing its distinctiveness in violation of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c).

37. As a direct and proximate result of Defendants' conduct, Patagonia is entitled to recover up to treble the amount of Defendants' unlawful profits and Patagonia's damages, and an award of attorney's fees under 15 U.S.C. §§§ 1116(a), 1117(a), and 1125(c).

38. Patagonia is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116(a) and 1125(c) that requires Defendants to stop promoting, distributing, offering, and selling products bearing the Defendants' Designs, and any other mark or design

similar to the PATAGONIA trademarks.

## FOURTH CLAIM

## FEDERAL COPYRIGHT INFRINGEMENT

### (17 U.S.C. §§ 101, *et seq.*, and 17 U.S.C. §§ 501, *et seq.*)

39.    Patagonia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 38 of this Complaint.

40.    Patagonia owns the copyright in its P-6 logo, which is federally registered and was registered prior to Defendants' copying.

41.    Defendants have copied, advertised, offered for sale, and/or sold substantially similar copies of the P-6 logo without Patagonia's authorization or permission and in violation of Patagonia's exclusive rights in its copyright.

42.    Defendants' unlawful reproduction, advertisement, distribution, and/or sale of Patagonia's proprietary design constitutes copyright infringement.  Patagonia alleges that Defendants acted intentionally and in bad faith when they reproduced Patagonia's copyrighted work (in identical or substantially similar form), and advertised, distributed, displayed, and/or sold products bearing the Defendants' Designs.

43.    Defendants' infringement alleged herein has caused and, if not enjoined, will continue to cause Patagonia to suffer irreparable harm for which there is no adequate remedy at law, and has also caused damage to Patagonia in an amount which cannot be accurately computed at this time but will be proven at trial.

44.    As a direct and proximate result of Defendants' conduct, Patagonia is entitled to injunctive relief, as well as actual damages and any profits earned by Defendants as a result of its infringements, or statutory damages of up to $150,000 for each work infringed, at Patagonia's election, pursuant to 17 U.S.C. § 504.

//

//

COMPLAINT
CASE NO. 2:25-cv-00707

- 15 -

# FIFTH CLAIM

## TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

## UNDER CALIFORNIA STATUTORY LAW

**(Cal. Bus. & Prof. Code § 14200 *et seq*.; Cal. Bus. & Prof. Code § 17200 *et seq*.)**

45.   Patagonia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 44 of this Complaint.

46.   Patagonia is the owner of numerous registrations for the PATAGONIA trademarks, as well as common law rights in those marks.

47.   Defendants have infringed upon Patagonia's PATAGONIA trademarks without the consent of Patagonia and in connection with the sale, offering for sale, distribution, or advertising of its products bearing the Defendants' Designs.

48.   Defendants' infringement of Patagonia's PATAGONIA trademarks is likely to cause confusion, mistake, and deception as to the source of the origin of Defendants' offerings.

49.   Defendants have used the infringing Defendants' Designs to enhance the commercial value of Defendants' offerings.

50.   Defendants' acts violate Patagonia's trademark rights under California Business & Professions Code §§14245 *et seq*.

51.   Defendants' conduct as alleged in this Complaint also constitutes "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising" within the meaning of California Business & Professions Code §§ 17200 *et seq*.

52.   Patagonia is entitled to monetary damages and injunctive relief prohibiting Defendants from selling products bearing Defendants' Designs, or any other products bearing a mark or design that is likely to be confused with the PATAGONIA trademarks.

53.   Without injunctive relief, Patagonia has no means by which to control the continuing injury to its reputation and goodwill or that of its PATAGONIA

trademarks. Patagonia has been and will continue to be irreparably harmed. No amount of money damages can adequately compensate Patagonia if it loses the ability to control its marks.

54. Because Defendants' actions have been committed willfully, maliciously, and intentionally, Patagonia is entitled to treble the amount of Defendants' unlawful profits and Patagonia's damages under California Business & Professions Code § 14250.

55. Because Defendants' conduct has been undertaken willfully, intentionally, and in reckless disregard of the possible injurious consequences, Patagonia is entitled to exemplary or punitive damages under Cal. Civ. Code § 3294.

**SIXTH CLAIM**

**TRADEMARK DILUTION UNDER CALIFORNIA LAW**

**(Cal. Bus. & Prof. Code § 14247)**

56. Patagonia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 55 of this Complaint.

57. Patagonia owns valid and protectable rights in its P-6 logo trademark.

58. The P-6 logo trademark is distinctive and famous within the meaning of the California Model State Trademark Law, Cal. Bus. & Prof. Code § 14247, in that it is a household brand in California, and were famous prior to Defendants' adoption of the Defendants' Designs.

59. Defendants' acts are likely to dilute the distinctive quality of the P-6 logo trademark. Defendants' acts therefore constitute trademark dilution under California Business & Professions Code § 14247, the analogous statutes of other states, and under California common law.

60. Patagonia is entitled to monetary damages and injunctive relief prohibiting Defendants from using the Defendants' Designs and any other mark or design similar to the P-6 logo trademark. Without injunctive relief, Patagonia has no means by which to control the continuing dilution of the P-6 logo trademark.

Patagonia has been and will continue to be irreparably harmed. No amount of money damages can adequately compensate Patagonia for such harm.

61. Because Defendants' actions have been committed willfully, maliciously, and intentionally, Patagonia is entitled to treble the amount of Defendants' unlawful profits and Patagonia's damages under California Business & Professions Code § 14250.

62. Because Defendants' conduct has been undertaken willfully, intentionally, and in reckless disregard of the possible injurious consequences, Patagonia is entitled to exemplary or punitive damages under Cal. Civ. Code § 3294.

## SEVENTH CLAIM

## TRADEMARK INFRINGEMENT UNDER CALIFORNIA COMMON LAW

63. Patagonia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 62 of this Complaint.

64. Patagonia owns valid and protectable rights in its PATAGONIA trademarks at common law.

65. Defendants' conduct is likely to cause confusion, to cause mistake, or to deceive as to the source of goods offered by Defendants, or as to affiliation, connection, association, sponsorship, or approval of such goods and services, and constitutes infringement of Patagonia's PATAGONIA trademarks at common law.

66. Defendants infringed Patagonia's PATAGONIA trademarks with knowledge and intent to cause confusion, mistake, or deception.

67. Defendants' conduct is aggravated by that kind of willfulness, wanton-ness, malice, and conscious indifference to the rights and welfare of Patagonia for which California law allows the imposition of exemplary damages.

68. As a direct and proximate result of Defendants' activities, Patagonia has suffered substantial damage.

69. Unless restrained and enjoined, the conduct of Defendants will further impair the value of the PATAGONIA trademarks and Patagonia's business

COMPLAINT
CASE NO. 2:25-cv-00707

- 18 -

reputation and goodwill.  Patagonia has no adequate remedy at law.

70.   Patagonia is entitled to monetary damages and injunctive relief prohibiting Defendants from using Defendants' Designs, and any other mark or design similar to the PATAGONIA trademarks.

71.   Without injunctive relief, Patagonia has no means by which to control the continuing injury to its reputation and goodwill or that of its PATAGONIA trademarks.  Patagonia has been and will continue to be irreparably harmed.  No amount of money damages can adequately compensate Patagonia if it loses the ability to control its marks.

72.   Because Defendants' actions have been committed willfully, maliciously, and intentionally, Patagonia is entitled to recover reasonable attorneys' fees and compensatory and punitive damages (see Cal. Civ. Code § 3294).

## **PRAYER FOR JUDGMENT**

WHEREFORE, Patagonia prays that this Court grant it the following relief:

1.   Adjudge that Defendants have promoted, distributed, offered and sold products bearing infringing and dilutive reproductions of Patagonia's federally registered trademarks;

2.   Adjudge that Defendants have infringed the PATAGONIA trademarks in violation of Patagonia's rights under 15 U.S.C. § 1114;

3.   Adjudge that Defendants have infringed the PATAGONIA trademarks in violation of California statutory law;

4.   Adjudge that Defendants have infringed Patagonia's common law rights in the PATAGONIA trademarks;

5.   Adjudge that Defendants have competed unfairly with Patagonia in violation of Patagonia's rights under 15 U.S.C. § 1125(a);

6.   Adjudge that Defendants have competed unfairly with Patagonia in violation of California statutory law;

7.   Adjudge that Defendants' activities are likely to dilute Patagonia's

famous PATAGONIA trademarks in violation of Patagonia's rights under 15 U.S.C. § 1125(c) and/or California law;

8.      Adjudge that Defendants have infringed Patagonia's copyright rights in its P-6 design;

9.      Adjudge that Defendants and their agents, employees, attorneys, successors, assigns, affiliates, and joint venturers, and any person(s) in active concert or participation with them, and/or any person(s) acting for, with, by, through or under them, be enjoined and restrained at first during the pendency of this action and thereafter permanently from:

a.      Manufacturing, producing, sourcing, importing, selling, offering for sale, distributing, advertising, or promoting any goods or services that display any words or symbols that bear reproductions or so resemble the PATAGONIA trademarks as to be likely to cause confusion, mistake, or deception, on or in connection with any product that is not authorized by or for Patagonia, including, without limitation, any product or service that bears the Defendants' Designs, or any other approximation of Patagonia's trademarks;

b.      Manufacturing, producing, sourcing, importing, selling, offering for sale, distributing, advertising, or promoting any goods or services that display any words or symbols that so resemble the PATAGONIA trademarks as to be likely to cause confusion, mistake, or deception, on or in connection with any product that is not authorized by or for Patagonia;

c.      Using any word, term, name, symbol, device, or combination that causes or is likely to cause confusion, mistake, or deception as to the affiliation or association of Defendants or their products with Patagonia, or as to the origin of Defendants' goods, or any false designation of origin, false or misleading description or representation of fact, or any false or misleading advertising, or likely dilution of the PATAGONIA trademarks;

d.      Further infringing the rights of Patagonia in and to its

COMPLAINT
CASE NO. 2:25-cv-00707

PATAGONIA trademarks, or otherwise damaging Patagonia's goodwill or business reputation;

      e.     Further diluting the famous PATAGONIA trademarks;

      f.     Otherwise competing unfairly with Patagonia in any manner;

      g.     Further infringing Patagonia's copyright rights in its P-6 logo design, including by reproducing, distributing, or displaying such logo or any other logo or design that is substantially similar to the P-6 logo; and

      h.     Continuing to perform in any manner whatsoever any of the other acts complained of in this Complaint.

10.     Adjudge that Defendants are prohibited from applying to register any trademark or service mark which is likely to be confused with, or that dilutes the distinctive quality of, Patagonia's PATAGONIA trademarks;

11.     Adjudge that Defendants be required immediately to deliver to Patagonia's counsel their entire inventory of infringing products, including without limitation, patches and any other products, packaging, labeling, advertising and promotional material, and all plates, patterns, molds, matrices, files, data, and other material for producing or printing such items, that are in their possession or subject to their control and that infringe Patagonia's trademarks as alleged in this Complaint;

12.     Adjudge that Defendants, within thirty (30) days after service of the Court's judgment, be required to file with this Court and serve upon Patagonia's counsel a written report under oath setting forth in detail the manner in which they have complied with the judgment;

13.     Adjudge that Patagonia recover from Defendants its damages and lost profits, and Defendants' profits in an amount to be proven at trial;

14.     Adjudge that Defendants be required to account for any profits that are attributable to their illegal acts, and that Patagonia be awarded (1) Defendants' profits and (2) all damages sustained by Patagonia, under 15 U.S.C. § 1117, plus

prejudgment interest;

15. Adjudge that the amounts awarded to Patagonia pursuant to 15 U.S.C. § 1117 shall be trebled;

16. Adjudge that Patagonia recover from Defendants its damages based on Defendants' copyright infringement, or statutory damages at Patagonia's election;

17. Adjudge that Patagonia recover punitive or exemplary damages from Defendants based on Defendants' conduct done willfully, intentionally, and in reckless disregard of its possible injurious consequences.

18. Order an accounting of and impose a constructive trust on all of Defendants' funds and assets that arise out of its infringing, dilutive activities;

19. Adjudge that Patagonia be awarded its costs and disbursements incurred in connection with this action, including Patagonia's reasonable attorneys' fees and investigative expenses; and

20. Adjudge that all such other relief be awarded to Patagonia as this Court deems just and proper.

DATED:  January 27, 2025          Respectfully submitted,

VERSO LAW GROUP LLP


By:  */s/ Ryan Bricker*
GREGORY S. GILCHRIST
RYAN BRICKER
SOPHY TABANDEH
PAYMANEH PARHAMI

Attorneys for Plaintiff
PATAGONIA, INC.

# DEMAND FOR JURY TRIAL

Patagonia, Inc. demands that this action be tried to a jury.

DATED:  January 27, 2025

Respectfully submitted,

VERSO LAW GROUP LLP


By:  */s/ Ryan Bricker*
     RYAN BRICKER

Attorneys for Plaintiff
PATAGONIA, INC.

COMPLAINT
CASE NO. 2:25-cv-00707